## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LHC, LLC, | Case No. 13-07001 |
| Debtor. | Honorable Judge Donald R. Cassling |

### TWENTIETH AGREED INTERIM ORDER (A) AUTHORIZING INTERIM USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO TRUSTEE AND (C) SCHEDULING A FINAL HEARING

This matter having come before the Court upon the *Motion for Authority to Use Cash Collateral and for Related Relief* (Docket No. 6, the "Motion")[1] filed by the debtor and debtor-in-possession in the above-captioned case (the "Debtor"); and an agreed order approving the Motion on an interim basis having been entered by this Court on March 5, 2013 (Docket No. 21), and then extended by this Court's interim order on i) April 2, 2013 (Docket No. 42); ii) May 24, 2013 (Docket No. 113); iii) June 4, 2013 (Docket No. 121); iv) June 11, 2013 (Docket No. 125); v) June 17, 2013 (Docket No. 128); vi) June 27, 2013 (Docket No. 136); vii) July 10, 2013 (Docket No. 142); viii) July 22, 2013 (Docket No. 147); (ix) August 12, 2013 (Docket No. 152); (x) September 27, 2013 (Docket No. 174); (xi) November 27, 2013 (Docket No. 178) (xii) January 28, 2014 (Docket No. 191); (xiii) March 3, 2014 (Docket No. 201); (xiv) April 23, 2014 (Docket No. 213); (xv) June 4, 2014 (Docket No. 228); (xvi) July 2, 2014 (Docket No. 241); (xvii) July 30, 2014 (Docket No. 247) and (xviii) September 3, 2014 (Docket No. 260); and it

---

[1] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

- 1 -

appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and UMB Bank, N.A., not individually, but as successor trustee (the "Trustee") under the Indenture (defined below), having consented to the Debtor's use of cash collateral, solely on an interim basis, subject to the terms and conditions set forth herein:

IT IS HEREBY FOUND THAT[2]:

A. On the Petition Date, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

B. Since the Petition Date, the Debtor has continued in the management and operation of its businesses and properties as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or committee has been appointed in the Debtor's Chapter 11 case.

C. The Debtor is obligated under the following undertakings:

(1) those certain $20,000,000 Sports Facility Revenue Bonds (Leafs Hockey Club Project) Series 2007A and Taxable Series 2007B (collectively, the "Bonds"), issued pursuant to a Trust Indenture dated as of February 1, 2007 (the "Indenture") by and between the Trustee and the Illinois Finance Authority (the "Authority");

(2) a certain Loan Agreement dated as of February 1, 2007 (the "Loan Agreement") by among the Authority, the Debtor and Leafs Hockey Club, Inc. (the "Club" or "Guarantor"), pursuant to which the proceeds of the Bonds were loaned by the Authority to the Debtor; and

(3) a certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of February 21, 2007 (the "Mortgage" and, collectively with the

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Indenture, the Loan Agreement and the other financing documents related to the Bonds, the "Bond Financing Documents").

D. The Trustee, pursuant to the Mortgage and related undertakings and filings, holds validly perfected liens and security interests over substantially all of the Debtor's assets and properties (collectively, the "Prepetition Collateral"), including, without limitation, the following:

(1) the real estate located at 801 Wesemann Drive in West Dundee, Kane County, Illinois commonly known as the "Leafs Ice Centre";

(2) all improvements situated on the real estate, and all fixtures and personal property of every nature whatsoever owned by the Debtor and on, or used in connection with, the real estate or the improvements thereon;

(3) all rents, revenues, issues, profits, proceeds, income, royalties, accounts, chattel paper, documents, instruments, escrows, letter-of-credit rights, security deposits, impounds, reserves, deposits for taxes, tax refunds and other rights to monies from the businesses and operations conducted by the Debtor on the premises;

(4) all general intangibles owned by the Debtor and related to the premises;

(5) all of the Debtor's accounts, contract rights, securities, investment property, financial assets and monies due or to become due to the Debtor in connection with the Premises; and

(6) all proceeds, products and offspring of the foregoing.

E. The Debtor has requested that the Trustee consent to the Debtor's use of "Cash Collateral" (as such term is defined in Section 363(a) of the Bankruptcy Code), including, without limitation, the cash proceeds of the Trustee's non-cash Prepetition Collateral.

F. The Trustee is willing to consent to the Debtor's use of Cash Collateral, but solely on an interim basis, on the terms and conditions provided herein. The Trustee is relying on the terms, conditions and protections provided herein in so consenting.

G. The agreements and arrangements described in the Motion and authorized in this Order have been negotiated at arm's-length with all parties represented by counsel, are fair and

reasonable under the circumstances, and are enforceable in accordance with their terms. The superpriority claims, security interests and liens and other protections granted to the Trustee pursuant to this Order will not be affected by any subsequent reversal, modification, vacatur or amendment of this Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

H.  In light of the Trustee's agreement to subordinate its liens and superpriority claims to the Carve-Out (defined herein), the Trustee is entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

I.  The liens and security interests granted to the Trustee hereunder shall not prime or impair any validly perfected lien or security interest senior to the liens and security interests of the Trustee with respect to the Debtor's assets and properties as of the Petition Date. The granting of replacement liens, super-priority administrative claims and other agreements of the Debtor hereunder constitutes adequate protection to the Trustee for the Debtor's use of Cash Collateral for purposes of this Order.

Good cause has been shown for entry of this Order and extending the terms of the Interim Order. Accordingly, this Order is required to avoid immediate and irreparable harm to the Debtor's estate. Entry of this Order, and extending the terms of the Interim Order, is in the best interests of the Debtor, its creditors, and the estate.

THE COURT HEREBY ORDERS, AS FOLLOWS:

1.  <u>Term</u>.  The Motion is granted and the Debtor's use of Cash Collateral is extended on an interim basis from October 1, 2014 through October 31, 2014 (the "Term") pending a final hearing thereon, which is hereby scheduled for October 28, 2014 (the "<u>Hearing Date</u>").

2. <u>Use of Cash Collateral</u>. Subject to the terms and conditions set forth in this Order, the Debtor is, through and including the earlier of (a) the Term or (b) termination of this Order as set forth in Paragraph 10 below, authorized pursuant to Bankruptcy Code Sections 105, 361, 362 and 363, and Bankruptcy Rules 2002, 4001, 6003 and 9014 to use Cash Collateral on an interim basis. The Cash Collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the budget attached hereto as <u>Exhibit A</u> (the "<u>Budget</u>") during the Term; <u>provided, however</u>, that the Debtor may use Cash Collateral in excess of the aggregate amount designated for a particular budget category (Payroll, Operations, Capital Improvement and General and Administrative (each a "<u>Budget Category</u>")) so long as the percentage of deviation for each Budget Category during any monthly period does not exceed ten percent (10%) of the amount of each Budget Category set forth in the Budget; <u>provided, further</u>, that no Cash Collateral shall be used for any capital expenditures during the Term except for such capital expenditures that are specifically provided for in the Budget; <u>provided, further</u>, that the capital expenditures or capital improvements specifically provided for in the Budget are only conditionally approved and require the specific written approval of the Trustee after the receipt and review of various information requested of the Debtor prior to any such capital expenditure or capital improvement being undertaken by the Debtor; and <u>provided, finally</u> that any amendment or modification of the terms and conditions, or any amendment, modification, roll-forward or replacement of the Budget itself, shall be subject to the prior written consent of the Trustee or prior order of the Court.

3. <u>Reporting</u>. The Debtor will submit to the Trustee on each consecutive Wednesday, not later than 5:00 p.m. Central time, an updated cash flow report in a form reasonably acceptable to the Trustee comparing actual results to the Budget and reporting on the

Variance of actual cash inflows and outflows from those set forth in the Budget. The Debtor will make its books and records, and its financial staff and advisors, reasonably available to the Trustee and its advisors at any time between the hours of 9:00 a.m. and 5:00 p.m. on any weekday, with not less than twenty-four (24) hours advance notice, to enable the Trustee to monitor the Debtor's compliance with the Budget and this Order and the Debtor's operations (whether historic, current or prospective).

4.    <u>Adequate Protection; Replacement Liens</u>. To the extent of the validity of the Trustee's Prepetition liens, the Trustee is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any diminution in value of its interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the Debtor's use of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code. As security for and solely to the extent of any diminution in the value of the Trustee's Prepetition Collateral from and after the Petition Date, calculated in accordance with Section 506(a) of the Bankruptcy Code (a "<u>Diminution in Value</u>"), the Trustee is hereby granted senior priority replacement liens upon all assets and property of the Debtor and its estate of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Prepetition Collateral (the "<u>Replacement Liens</u>"), but excluding all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Sections 502(d), 506(c), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code and any other avoidance claims and causes of action arising under state or federal law; <u>provided, however</u>, that the Replacement Liens shall be subject and subordinate to the Carve-Out (defined below). The Replacement Liens so granted are in addition to all security

interests, liens, and rights of setoff existing in favor of the Trustee on the Petition Date, and are and shall be valid, perfected, enforceable and effective as of the Petition Date without any further action of the Debtor or the Trustee and without the necessity of the execution, filing or recording of any financing statements, security agreements, mortgages, or other documents, or of obtaining control agreements over bank accounts.

5. <u>Adequate Protection; 507(b) Priority Claim</u>. The Trustee is hereby granted an administrative claim with a priority equivalent to a claim under Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, on a dollar-for-dollar basis for and solely to the extent of any Diminution in Value, which administrative claim shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered pursuant to, Sections 105, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113 and 1114 of the Bankruptcy Code (the "<u>Super-Priority Administrative Claim</u>"), except for expenditures constituting the Carve-Out.

6. <u>Adequate Protection; Fees and Expenses</u>. The Debtor is hereby authorized and directed to pay the reasonable fees and expenses of Trustee's outside legal and financial advisors in an aggregate amount not to exceed $5,000 per week. The Debtor shall remit such amount to the Trustee by check without the need for any invoice and, if such amount exceeds the reasonable fees and expenses of the Trustee's outside legal and financial advisors, then the balance shall be deposited by the Trustee in the Debt Service Reserve Fund maintained under the Indenture. Notwithstanding the foregoing, the Trustee reserves its right to assert claims for the payment of all fees and expenses in excess of those amounts pursuant to the Bond Financing Documents and applicable law, and the Debtor reserves the right to argue that all such payments should be allocated to the aggregate amount due in such manner as is determined by the Court on motion after notice and a hearing.

7. <u>Carve-Out</u>. The Replacement Liens and Super-Priority Administrative Claim granted hereunder shall be junior and subordinate to the following fees and expenses (the "Carve-Out"): (a) all accrued but unpaid fees and expenses (the "Professional Fees and Expenses") of the attorneys, accountants or other professionals retained by the Debtor and any statutory committee of unsecured creditors appointed in the Chapter 11 case under section 327 or 1103(a) of the Bankruptcy Code (the "Committee") (collectively, the "Professionals"), allocable to the Debtor under and to the extent set forth in the Budget and incurred prior to the delivery of a Termination Notice; (b) Professional Fees and Expenses in the amount of $15,000 incurred after delivery of a Termination Notice; and (c) the payment of fees pursuant to 28 U.S.C. § 1930 to the extent related to the Chapter 11 case of the Debtor, provided that all such fees and expenses shall be subject to approval by a final order of the Court pursuant to Sections 326, 328, 330, 331 or 363 of the Bankruptcy Code and shall be paid from the estate solely to the extent that any and all prepetition retainers have been exhausted. Notwithstanding anything to the contrary set forth herein, no Cash Collateral nor any portion of the Carve-Out may be used to prosecute actions, claims, demands or causes of action against the Trustee, or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority or enforceability of the Trustee's liens and security interests against the Prepetition Collateral or the Replacement Lien.

8. <u>Investigation Period</u>. As (i) the Debtor did not commence an action pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure to challenge or invalidate the Trustee's liens and security interests in the Prepetition Collateral (an "Adversary Challenge") on or before April 29, 2013, and (ii) a Committee or any other party-in-interest did not commence such an Adversary Challenge on or before May 20, 2013, the Trustee's liens and security interests are

hereby deemed (x) valid, binding, in full force and effect, (y) perfected and senior to any and all other liens upon and claims against the Pre-Petition Collateral, and (z) not subject to any defenses, avoidance, subordination, or recharacterization. Any party-in-interest, including the Debtor or a Committee, is deemed to have irrevocably waived its right to later bring any such Adversary Challenge in this case.

9.  <u>Events of Default</u>. Each of the following shall constitute an event of default ("<u>Event of Default</u>") with respect to the Debtor's authorization to use Cash Collateral hereunder, unless otherwise waived in writing by the Trustee:

(a) entry of an order converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

(b) entry of an order dismissing this Chapter 11 case;

(c) entry of an order appointing or directing the election of a trustee under Section 1104 of the Bankruptcy Code or an examiner under Section 1106(b) for the Debtor;

(d) without the prior written consent of the Trustee, the entry of any order (or other judicial action which has the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Order;

(e) the Debtor uses Cash Collateral for any purpose or in a manner other than as permitted in this Order and in the Budget or otherwise fails to comply with any term of this Order unless agreed to by the Trustee or ordered by the Court;

(f) entry of an order by the Bankruptcy Court authorizing relief from stay by any person (other than the Trustee) on or with respect to all or any portion of the Prepetition Collateral with a value in excess of $50,000;

(g) the filing by the Debtor or any other party of any pleading objecting to or seeking to challenge the Trustee's claims with respect to the Bond Financing Documents or the Trustee's lien upon Cash Collateral or the Prepetition Collateral or otherwise asserting rights, claims or causes of action against the Trustee with respect to the Bond Financing Documents or the Prepetition Collateral;

(h) the breach by the Debtor of its obligations under this Order;

(i) the filing by the Debtor of any debtor-in-possession financing pleadings or any final documents pertaining to a debtor-in-possession financing not acceptable to and not supported by the Trustee;

(j) the filing by the Debtor of any bid procedure and/or sale documents relating to the sale of the Prepetition Collateral, post-petition collateral subject to the Replacement Lien, and/or Cash Collateral not acceptable to and not supported by the Trustee;

(k) the Debtor voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or ceases the operation of any material portion of its business; or

(l) the failure of a conference call between the Debtor's bondholders and the Debtor's management to occur at least once in October, 2014; provided, however, that the failure to have such a call must be caused by the Debtor's unwillingness or inability to participate in such a conference call; and provided further, that any recordings made by the Trustee of any such conference calls shall be promptly provided to the Debtor's counsel.

10. Termination Notice. Immediately upon the occurrence or existence of an Event of Default, the Trustee shall be authorized to issue a notice (a "Termination Notice") thereof to the Debtor, its counsel, counsel to any Committee and the U.S. Trustee, which Termination Notice may be delivered by electronic mail or facsimile. Unless, within five (5) business days after the issuance of such notice, the Court determines that the applicable Event of Default has not occurred or does not exist, the Debtor's authority to use Cash Collateral shall terminate. Nothing in this paragraph or Order shall preclude the Debtor from bringing a new motion to use cash collateral or otherwise seeking continued use of cash collateral on such terms as this Court determines.

11. No Duty to Monitor Compliance. The Trustee may assume that the Debtor will comply with all terms and conditions of this Order and the Budget, and the Trustee shall not (a) be obligated to ensure or monitor the Debtor's compliance with any financial covenants, formulae or other terms and conditions of this Order or the Bond Financing Documents, (b) be obligated to pay (directly or indirectly from Cash Collateral or otherwise) any expenses incurred or authorized to be incurred pursuant to this Order or in connection with the operation of the

Debtor's business, or (c) be obligated to ensure or monitor that Cash Collateral exists to pay such expenses.

12. <u>No Waiver; Reservation of Rights</u>. The failure of the Trustee to seek relief or otherwise exercise its rights and remedies under this Order or the Bond Financing Documents, as applicable, shall not constitute a waiver of the Trustee's rights hereunder, thereunder or otherwise. The Trustee reserves its right to request different or additional adequate protection in the future, and the Debtor or any other party-in-interest may contest any such request. Any such request shall be heard by the Court on three (3) business days notice or as soon thereafter as the Court's schedule permits. In addition, the Trustee reserves all rights, objections and defenses, including, without limitation, with respect to any use of Cash Collateral for periods extending beyond the Hearing Date or with respect to any final relief pertaining to the Cash Collateral and/or the Prepetition Collateral. Similarly, except as expressly set forth in this Order, nothing herein shall constitute a waiver or relinquishment by the Debtor of any right, claim, cause of action, or defense against the Trustee or any third party.

13. <u>No Third Party Rights.</u> Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holders or any direct, indirect or incidental beneficiary.

14. <u>Section 552(b).</u> In light of its agreement to subordinate its liens and superpriority claims to the Carve-Out, the Trustee shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Trustee with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

15. <u>Effect of Order</u>. This Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3)). The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered (a) confirming any plan of reorganization; (b) dismissing this chapter 11 case; (c) converting this chapter 11 case to any other chapter under the Bankruptcy Code; (d) withdrawing of the references of this chapter 11 case from the Court; and (e) providing for abstention from handling or retaining of jurisdiction of this chapter 11 case in the Court.

16. <u>Amendments and Waivers</u>. The Debtor and the Trustee may amend, modify, supplement or waive any provision of this Order in writing if such amendment, modification, supplement or waiver is not material, without any need to apply to, or receive further approval from, the Court. The Debtor shall provide notice of any such nonmaterial amendment, modification, supplement or waiver to counsel for any official committee of creditors appointed in this case and the Office of the United States Trustee. Any material amendment, modification, supplement or waiver shall be in writing, signed by the Debtor and the Trustee, and approved by the Court on appropriate notice by the Debtor.

17. <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Order and the Motion, the provisions of this Order shall govern.

18. <u>Final Hearing</u>. A final hearing on the Motion is scheduled for October 28, 2014, at 10:30 a.m. (the "<u>Final Hearing</u>").

Dated: 30 SEP 2014

ENTER  *Donald R. Cassling*

Hon. Donald R. Cassling
United States Bankruptcy Judge

## EXHIBIT A

## CASH COLLATERAL BUDGET

DM_US 55204810-2.083118.0018

Leafs Ice Centre
Cash Collateral
October 1 - October 31
2014

| | OCTOBER | |
|---|---|---|
| **Revenue** | | |
| Contracted Ice Sales | 116568 | Leafs 66875, TI 24211, CLS 8577, NI 6623, Carey-Grove 4296, SE 4936, Kings 1050 |
| Tournaments | 27000 | Budget projection My Hockey |
| Youth Hockey - Little Leafs | 0 | Budget projection |
| Youth Hockey - Camps | 3,000.00 | Budget projection |
| Adult Hockey | 26000 | Timing, expect to be 16-18k over September projection |
| Team Fitness Training | 5000 | Budget projection |
| Studio/training | 0 | Budget projection |
| Figure Skating - Silver Leafs | 5000 | Budget projection |
| Figure Skating - Camps | 0 | Budget projection |
| Figure Skating - Ice Shows | 0 | Typo in projections |
| Synchronized skating | 7000 | Budget projection |
| Lease income | 9000 | Based on Lease Terms |
| Other revenue | 13000 | Budget projection |
| Vending | 2000 | Budget projection |
| **Budgeted Revenue** | **213568** | |
| **Operating Expenses** | | |
| Payroll | 5800 | Budget projection Based on History/Sales |
| Youth Hockey - Little Leafs | | Budget projection Based on History/Sales |
| Youth Hockey - Camps | | |
| Adult Hockey | 9400 | Budget projection Based on History/Sales |
| Pinnacle | | |
| Studio | | |
| Figure Skating - Silver Leafs | | Budget projection Based on History/Sales |
| Figure Skating - Camps | | Budget projection Based on History/Sales |
| Figure Skating - Ice Shows | | Budget projection Based on History/Sales |
| Synchronized skating | 1250 | Budget projection Based on History/Sales |
| Skating | 22500 | |
| Office | 18750 | |
| Operations | | |
| Workmens Comp | | |
| **Total Payroll** | **57700** | |
| **Operations** | | |
| Youth Hockey - Little Leafs | 1750 | |
| Youth Hockey - Camps | 1200 | |
| Adult Hockey | 2034 | |
| Pinnacle | 2500 | Off Ice Training Begin/TI not committed yet |
| Figure Skating - Silver Leafs | 200 | Based on # of Games |
| Figure Skating - Camps | 0 | |
| Figure Skating - Ice Shows | 4000 | Budget projectiopn Based on History/Sales + 2775 Costumes |
| Synchronized skating | | |
| Ballet room | | |
| Building | 53 | Budget projectiopn Based on History/Sales |
| **Total Operations** | **11737** | |
| **General and Administrative** | | |
| Insurance | 6118 | Actual Due |
| Alarm | 500 | Usage will be up |
| Fuel | | Budget projectiopn Based on History/Sales |
| Utilities | 34000 | Actual bill is 5649 |
| Waste removal | 650 | Budget projectiopn Based on History/Sales |
| Landscape/Snow removal | 661 | Budget projectiopn Based on History/Sales |
| Maintenance and Supplies | 10000 | Budget projectiopn Based on History/Sales |
| Office | 10000 | Budget projection Based on History/Sales |
| Management fee | 7500 | Per Contract |
| Bond trustee Fee | 20000 | Per CC Order |
| **Total G&A** | **89429** | |
| **Total Operating Expenses** | **158866** | |
| Net Operating Income (loss) | 54702 | |
| Property taxes | | |
| Capital Improvement | 10000 | Carry over from September: Flooring for Studio Rink Conversion, Mens Bathroom Floor Repairs |
| **Total Expense** | **168866** | |
| **Net Cash Flow (Deficit)** | **44702** | |